**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**ALAN CAMPBELL,**

                                **Petitioner,**

     **v.**                                                          **9:02-CV-0705**
                                                                         **(NPM)**

**GARY GREENE, Superintendent, Marcy**
**Corr. Facility,**

                                **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

<u>**APPEARANCES:**</u>                    <u>**OF COUNSEL:**</u>


**FOR THE PETITIONER**:

**ALAN CAMPBELL**
Petitioner, <u>pro</u> <u>se</u>
99-B-1515
Five Points Correctional Facility
State Route 96
PO Box 119
Romulus, NY 14541

**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**           **SENTA B. SIUDA, Esq.**
Attorney General of the          Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**

                **<u>MEMORANDUM-DECISION AND ORDER</u>**


**I.**     <u>**Background**</u>


    **A.**     <u>**State Court Proceedings**</u>

According to the testimony adduced at trial, in March, 1998 Stephen Brozost was a

senior caseworker employed by the Adult Protective Services Division of the Broome County

Department of Social Services ("Broome County DSS").  <u>See</u> Transcript of Trial of Alan

Campbell (5/4/99) ("Trial Tr.") at 181-83.  On March 18, 1998, after numerous unsuccessful

attempts by Brozost to contact one of his clients, petitioner, <u>pro</u> <u>se</u> Alan Campbell, Brozost drove

to Campbell's home on Amsbry Street in Binghamton, New York.  Trial Tr. at 183-84.  Upon

arriving at Campbell's residence, Brozost noticed that the back door to the home was ajar.  Trial

Tr. at 184.  He then called out to Campbell on several occasions in the darkened home to no

avail.  Trial Tr. at 185.  Although Brozost suspected that Campbell was in the residence, Brozost

left the home and contacted the Binghamton police department when he heard what he believed

to be rustling noises coming from within the residence.  Trial Tr. at 185.

Richard Edwards, a patrolman with the police department, was dispatched to Campbell's

Amsbry Street residence to assist in the developing situation at the home.  Trial Tr. at 206.  Upon

arriving at Campbell's residence, Officer Edwards called out to Campbell that Officer Edwards

was "with a case worker" and that the two were there to help Campbell.  Trial Tr. at 207-08.  As

Officer Edwards was knocking on the rear door of the residence to gain entry, the door popped

open and he, Brozost and Officer James Mooney of the Binghamton police department entered

the dimly-lit home.  Trial Tr. at 208-10.  Soon after entering the residence, Officer Edwards

noticed that Campbell was holding a dark, long-barreled revolver.  Trial Tr. at 211.  Brozost was

then directed to leave the residence, Trial Tr. at 212, and the officers began a "back and forth"

conversation with Campbell that lasted over one hour.  Trial Tr. at 213.  During that time,

Officers Edwards and Mooney – both of whom were in police uniform – assured Campbell that

they were police officers, Trial Tr. at 213, 240, however Campbell accused the men of

attempting to burglarize his residence.  Trial Tr. at 213.

After several hours during which Officers Edwards, Officer Mooney and other law enforcement agents attempted to persuade Campbell to leave his residence, he fired a shot which hit the ballistics shield of Police Officer James A. Grier.  Trial Tr. at 286-89, 310.  Soon thereafter, Campbell fired another shot in the direction of the police.  Trial Tr. at 307.  To end the increasingly dangerous situation that was unfolding at the scene, law enforcement agents injected tear gas into Campbell's home to force him to leave the residence.  Trial Tr. at 290. Campbell soon left his home and was placed under arrest.  Trial Tr. at 290-91.

On April 8, 1998, a Broome County grand jury returned an indictment against Campbell. See Indictment No. 98-229 ("Indictment").  In that accusatory instrument, Campbell was charged with, inter alia: i) attempted murder in the first degree, in violation of N.Y. Penal L. §§ 110.00 and 125.27; ii) attempted first degree assault, in violation of N.Y. Penal L. §§ 110.00 and 120.10; and iii) reckless endangerment in the first degree, in violation of N.Y. Penal L. § 120.25. See Indictment, Counts One through Three.[1]

By Order filed on May 18, 1998, Broome County Court Judge Martin E. Smith directed Campbell to undergo a psychiatric examination pursuant to New York's Criminal Procedure Law ("CPL") § 730.  See Stipulated Record on Appeal ("Stipulated Record") at R7-10. Campbell was thereafter examined by two psychiatrists who prepared reports for the county court which addressed the issue of Campbell's fitness to proceed to trial.  After reviewing those reports, Judge Smith committed Campbell to the custody of the New York State Office of Mental

---

[1]     The Indictment also charged Campbell with two counts of criminal menacing, see Indictment, Counts Four, Five, however the parties stipulated at trial that those charges would not be submitted to the jury for its consideration.  See Trial Tr. at 489-90.

Health.  See People v. Campbell, No. 98-229 (Broome Cty. Ct. June 15, 1998).

The following year, Judge Smith ordered Campbell to undergo another mental health examination, see Stipulated Record at R56-58, and after the court's review of the reports prepared following that examination, Judge Smith directed that a competency hearing be held relating to Campbell's fitness to stand trial.  On May 3, 1999, Judge Smith presided over that hearing.  At the conclusion of that proceeding, Judge Smith determined that Campbell was fit to proceed to trial.  See Transcript of Competency Hearing in People v. Campbell, No. 98-229 (5/3/99) ("May, 1999 Competency Hearing") at 79.

Beginning on May 4, 1999, Campbell was tried in Broome County Court before a jury on the charges brought against him in the Indictment with Judge Smith presiding.  After making several requests during the course of its deliberations, see Trial Tr. at 564-587, the jury advised the trial court that it had reached a verdict in the case.  Trial Tr. at 587.  In its verdict, the jury acquitted Campbell of the attempted murder charge but convicted him of the remaining counts in the Indictment that were submitted to the jury.  Trial Tr. at 590-91.

On July 26, 1999, Judge Smith sentenced Campbell to a term of seven and one-half to fifteen years imprisonment on the first degree attempted assault conviction, and a lesser, concurrent sentence on the remaining conviction.  See Transcript of Sentencing of Alan Campbell (7/26/99) at 11-12.

Campbell appealed his convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department.  In support of that appeal, in addition to counsel's appellate brief, Campbell filed a pro se appellate brief with the Appellate Division in which Campbell asserted numerous points in support of his appeal.  See Pro Se Appellate Brief

(7/30/00) ("Pro Se Appellate Brief") at 1-54. Campbell's appeal was opposed by the Broome County District Attorney, and on January 18, 2001, the Third Department unanimously affirmed Campbell's convictions and sentences. People v. Campbell, 279 A.D.2d 797 (3d Dept. 2001). New York's Court of Appeals subsequently denied Campbell leave to appeal in its order dated May 16, 2001. See People v. Campbell, 96 N.Y.2d 826 (2001).

### B. Proceedings in this Court

Campbell commenced this proceeding, pro se, on May 24, 2002. See Petition. After filing several motions seeking various forms of relief that were addressed by this Court, on September 2, 2003, Campbell filed a motion to file an amended petition in this action. Dkt. No. 26. The Office of the Attorney General for the State of New York, who had filed an appearance in this matter on respondent's behalf, took no position with respect to Campbell's application, Dkt. No. 29, and by order filed October 9, 2003, then-Magistrate Judge Gary L. Sharpe granted Campbell's motion to amend. See Dkt. No. 31. Petitioner filed that amended pleading on November 21, 2003. See Dkt. No. 33 ("Am. Pet.").

In his amended petition, Campbell asserts numerous grounds in support of his request for federal habeas intervention. Specifically, Campbell argues in his amended pleading that: i) the prosecution failed to prove all elements of the charges brought against him; ii) his conviction was the product of both an illegal arrest and seizure; iii) he was improperly questioned by law enforcement agents in violation of his Miranda rights;[2] iv) he was wrongfully denied the opportunity to testify before the grand jury that indicted him; v) perjurious testimony was presented to the grand jury; vi) he was denied his constitutional right to a speedy trial; vii) he

---

[2]         Miranda v. Arizona, 384 U.S. 436 (1966).

was improperly forced to wear prison attire during the course of his criminal trial; viii) certain

prosecution witnesses committed perjury during the course of the trial; ix) Campbell received the

ineffective assistance of trial counsel; x) the prosecutor engaged in misconduct during the course

of the criminal proceedings below; xi) the county court committed various errors that necessitate

overturning Campbell's conviction; xii) the testimony of the police officers regarding what

transpired March 18, 1998 was not credible; xiii) the jury's verdict was inconsistent; xiv)

Campbell received the ineffective assistance of appellate counsel; and xv) Campbell was

wrongfully denied the opportunity to orally present his appellate arguments to the Third

Department.  See Am. Pet. at 9-27.  In opposing Campbell's amended petition, the Attorney

General argues that none of petitioner's habeas claims have merit.  See Dkt. Nos. 15 ("Resp.

Mem."), 35.

## II.    **DISCUSSION**

### A.    **Applicable Standard of Review**

In Rodriguez v. Miller, 439 F.3d 68 (2d Cir. 2006), the Second Circuit recently observed

that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of the
> facts in light of the evidence presented in the State court
> proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403

F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003).  The

AEDPA also requires that in any such proceeding "a determination of a factual issue made by a

State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>DeBerry</u>, 403 F.3d at 66; <u>Boyette v. LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" <u>Rodriguez</u>, 439 F.3d at 73 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).  Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Rodriguez</u>, 439 F.3d at 73 (quoting <u>Williams</u>, 529 U.S. at 413).  A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." <u>Williams</u>, 529 U.S. at 409; <u>see also</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).  The <u>Rodriguez</u> court noted that although "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Rodriguez</u>, 439 F.3d at 73 (citing <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).

### B.   Substance of Campbell's Claims

#### 1.   Sufficiency of Evidence

In the first ground of his amended petition, Campbell argues that the prosecution failed to

"prove all elements of the charge[s]."  Am. Pet. at 9.

### i.      Clearly Established Supreme Court Precedent

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to establish the crime with which the defendant is charged.  See Fiore v. White, 531 U.S. 225, 228-29 (2001); Jackson v. Virginia, 443 U.S. 307, 315 (1979); In re Winship, 397 U.S. 358, 364 (1970).  This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 324; Schlup v. Delo, 513 U.S. 298, 323 n.38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor.  Jackson, 443 U.S. at 319. Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."  United States v. Powell, 469 U.S. 57, 67 (1984) (citing Jackson)) (other citations omitted).

### ii.      Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent

A habeas petitioner bears a "very heavy burden" when seeking to invalidate a conviction based upon a claim of insufficient evidence.  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)); see also Clark v. Irvin, 844 F.Supp. 899, 904 (N.D.N.Y. 1994) (Hurd, M.J.). Specifically, the court is to determine whether:

> the jury, drawing reasonable inferences from the evidence, may
> fairly and logically have concluded that the defendant was guilty
> beyond a reasonable doubt.  In making this determination, [the
> court] must view the evidence in the light most favorable to the
> government, and construe all permissible inferences in its favor.

Ferguson v. Walker, No. 00CIV1356, 2001 WL 869615, at *4 & n.4 (S.D.N.Y. Aug. 2, 2001)

(Peck, M.J.) (quoting United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983)) (citations

omitted), adopted, Ferguson v. Walker, No. 00CIV1356, 2002 WL 31246533 (S.D.N.Y. Oct. 7,

2002).  Furthermore, when considering a challenge based upon the sufficiency of evidence, a

federal habeas court must look to state law to determine the elements of a crime.  See Jackson,

443 U.S. at 324; Ponnapula, 297 F.3d at 179.  This Court therefore considers Campbell's habeas

claim that the prosecution failed to "prove all elements of the charge[s]" in conjunction with

both of the crimes of which he was convicted.  Am. Pet. at 9.

### a. **First Degree Attempted Assault**

For the jury to have properly convicted Campbell of first degree attempted assault, the

prosecution was required establish that Campbell, with the intent to cause serious physical injury

to another person, did attempt to cause such an injury to another person by means of a deadly

weapon.  See N.Y. Penal Law § 120.10(1);[3] Almonte v. Lape, No. 05CIV. 1995, 2006 WL

839073, at *9 (S.D.N.Y. Mar. 30, 2006); see also Trial Tr. at 547-48.

In an apparent attempt to persuade this Court that the prosecution failed to establish that

Campbell intended to cause serious physical injury to any of the individuals in his home on

March 18, 1998, Campbell argues that the officers in his home at the time the shots were fired

---

[3]     New York Penal Law defines "serious physical injury" as "physical injury
which creates a substantial risk of death ...."  See N.Y. Penal L. § 10.00(10); Almonte, 2006
WL 839073, at *9.

were behind a wall where they could not have been injured.  Am. Pet. at 9.  He further claims

that at the time he fired his gun, he:  i) was blinded by the lights that were being used by the law

enforcement agents at the time of the shooting (thereby establishing that Campbell could not

have intended to harm anyone); and ii) did not believe anyone was in the area at which his gun

was pointed.  Am. Pet. at 10.  Campbell also seems to claim that the dark clothing worn by the

law enforcement agents that were in his house rendered them "invisible," further demonstrating

that he did not attempt to shoot anybody.  Id.  Campbell argues that "[r]eckless [c]onduct that

comes within inches or even injures is not intentional."  Id.

      As noted above, the evidence established that Campbell fired a gun in the direction of

police officers who had been engaged in lengthy discussions with Campbell in his home, and

that the bullet petitioner fired lodged in the ballistics shield the officer was holding.  Trial Tr. at

286-89, 305-07.  Such officer testified that at the time the shield was struck by the bullet, it was

protecting the right side of his chest.  Trial Tr. at 310.  Campbell also fired a second round at the

officers.  Trial Tr. at 307.  Petitioner has offered nothing short of mere conjecture which supports

his claim that he could not see the police officers with whom he was speaking, either because of

the poor lighting in his home at the time or due to the clothing that they were wearing.

Moreover, the fact that the ballistics shield that was being held by one of officers was hit by

Campbell's bullet establishes that the officers were not protected from danger by any wall in his

home.  Since the evidence clearly demonstrated that Campbell fired his gun at law enforcement

agents, "no reasonable view of the evidence supports the conclusion that the defendant intended

to cause the complainant anything less than 'serious physical injury ... by means of a deadly

weapon.'"  People v. Brooks, 278 A.D.2d 501, 501 (2d Dept. 2000).  Thus, this aspect of

Campbell's amended petition is without substance.

### b. <u>First Degree Reckless Endangerment</u>

As to the remaining charge of which the jury found Campbell guilty, reckless endangerment in the first degree, the Court initially notes that it is unclear whether Campbell is challenging his conviction on that charge in the present action. As noted above, Campbell suggests that he engaged in reckless conduct – but not intentional conduct – at the time he fired his weapon. <u>See</u> Am. Pet. at 10 ("[r]eckless [c]onduct that comes within inches or even injures is not intentional").

Nevertheless, this Court is cognizant of the fact that habeas actions are to be construed liberally in this Circuit. <u>Alexis v. Smith</u>, No. 03CIV.391, 2003 WL 22434154, at *4 (S.D.N.Y. Oct. 24, 2003) (citing <u>Chambers v. United States</u>, 106 F.3d 472, 475 (2d Cir. 1997)); <u>Montalvo v. Newton</u>, No. 98CIV8665, 2001 WL 1399527, at *4 (S.D.N.Y. Mar. 23, 2001) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)); <u>see</u>, <u>e.g.</u>, <u>Phillips v. Gordich</u>, 408 F.3d 124, 130 (2d Cir. 2005) (in construing <u>pro</u> <u>se</u> parties' submissions, "the court's imagination should be limited only by [party's] factual allegations, not by the legal claims set out in his pleadings") (citation omitted). This Court will therefore consider this ground for relief as one that also challenges the sufficiency of the evidence adduced at trial regarding Campbell's guilt of the reckless endangerment charge.

To establish petitioner's guilt of that crime, the prosecution was required to prove that on March 18, 1998, Campbell, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of danger to another person or persons. <u>See</u> N.Y. Penal Law § 120.25; <u>People v. Martinez</u>, 166 A.D.2d 882 (4th Dept. 1990); <u>see</u> <u>also</u>

Trial Tr. at 548-49.

The trial testimony referenced above established that Campbell fired his gun on more than one occasion in a darkened residence in which he was clearly aware that others were present. That conduct is more than sufficient to demonstrate that Campbell was guilty of the crime of reckless endangerment in the first degree. E.g., Rodriguez v. Hoke, No. 86 C 3058, 1987 WL 9679, at *2-3 (E.D.N.Y. Apr. 1, 1987) (evidence that petitioner fired gun in darkened room in which police officers were present established petitioner's guilt of crime of first degree reckless endangerment).

In sum, this Court concludes that the evidence adduced at trial established Campbell's guilt of the above charges, and was more than sufficient to surpass the relatively modest hurdle posed by Jackson. Therefore, the undersigned denies Campbell's first ground for relief.

## 2.   **Fourth Amendment Violations**

In his second ground, Campbell argues that the police did not have probable cause to enter his home on March 18, 1998, and that therefore all evidence obtained by law enforcement agents should have been suppressed by the county court. See Am. Pet. at 10. Campbell further claims that because there was no basis upon which the police could have reasonably believed that Campbell had committed a crime or was a danger to himself, his arrest was illegal.[4]  Id. at 10-11. Petitioner additionally asserts that when the police returned to his home after his arrest on March 18, 1998, law enforcement agents only possessed a warrant which authorized the

---

[4]       Campbell's claim that his arrest was illegal is rooted in the Fourth Amendment to the United States Constitution. See Rodriguez v. Zon, No. 01-CV-2036, 2004 WL 1752418, at *7 (E.D.N.Y. Aug. 5, 2004); McPherson v. Greiner, No. 02 CIV.2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22, 2003).

removal of weapons found in Campbell's house, and therefore all evidence they removed from his apartment which was not specifically authorized by the search warrant was illegally seized and should have been suppressed.  Id. at 11-12.

In this circuit, the merits of a Fourth Amendment claim asserted in a federal habeas petition may only be properly reviewed by a district court where:  1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations; or 2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself of such procedure due to an unconscionable breakdown in the underlying process.  Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Stone v. Powell, 428 U.S. 465, 481-82 (1976)); see also Martinez v. Senkowski, No. 6:97-CV-624, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.).

New York State has provided an opportunity for criminal defendants to fully and fairly litigate Fourth Amendment claims.  See CPL § 710; Capellan, 975 F.2d at 70 n.1; Jackson v. Lacy, 74 F.Supp.2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr.).  Specifically, under the CPL, a criminal defendant may move to suppress evidence he believes was unlawfully or improperly obtained where the defendant "has reasonable cause to believe that such [evidence] may be offered against him in a criminal action."  See CPL § 710.20.  Accordingly, in light of Stone and Capellan, Campbell must demonstrate that he was precluded from fully and fairly litigating the present habeas claim in the state courts in order to establish a legal basis for this Court's review of his Fourth Amendment claim.  Chavis v. Henderson, 638 F.2d 534, 538 (2d Cir. 1980); Devino v. Duncan, No. 01 CIV. 9044, 2004 WL 884961, at *4 (S.D.N.Y. Apr. 23, 2004);

<u>Montalvo v. Annetts</u>, No. 02 CIV.1056, 2003 WL 22962504, at *16 (S.D.N.Y. Dec. 17, 2003)

(citing <u>Chavis</u>) (other citations omitted).

Nowhere in Campbell's amended petition does he claim that he was denied a full and

fair opportunity to litigate his Fourth Amendment challenges in the state court.  <u>See</u> Am. Pet.

Additionally, this Court's review of the transcript of the suppression hearing conducted by the

county court establishes that the trial court's denial of Campbell's suppression motion was a

reasoned decision based upon the facts presented to that court at such hearing.[5]  Specifically,

after considering all of the evidence adduced at that hearing, the county court made the following

factual findings:

> It is clear that the police were properly advised by Mr. Brozost of
> the Broome County Department of Social Services ... that
> [Campbell] had just recently been released from the Binghamton
> Psychiatric Center ..., that he suffered from a mental disease or
> defect and ... [he was] a danger to himself or others.... Mr. Brozost
> ... was under an obligation to attempt to locate the Defendant
> because he did have, in fact, a good faith basis to believe that the
> Defendant was one of those individuals which the statute defines
> as falling into the category of self-neglect. .... The information ...
> Mr. Brozost ... made available to the Binghamton police was
> specifically that the Defendant had been released from
> Binghamton Psychiatric Center upon the understanding and
> condition that he was going to be residing at the Volunteers of
> America for the simple reason that his home ... was totally
> uninhabitable, lacked all utilities.  On top of that the Defendant
> had a history of having an open fire in that apartment which caused
> a further fire and the individuals had to be evacuated from the
> apartment....  Mr. Brozost had a good faith basis ... to attempt to

_____

[5]     Judge Smith presided over a suppression hearing on March 22, 1999, the
purpose of which was to determine, <u>inter alia</u>, whether the arrest of Campbell on March 18,
1998 was lawful and additionally whether evidence seized from Campbell's home, and the
statements he made to law enforcement agents following his arrest, could properly be
introduced as evidence against Campbell at his trial.  <u>See</u> Transcript of Suppression Hearing
(3/22/99) ("Suppression Tr.").

> locate the defendant and when he went to defendant's apartment on
> March 18 he heard a noise in the apartment.... And it is this
> Court's view that the police, likewise, had an affirmative obligation
> to go to defendant's apartment ... to attempt to locate him to
> determine whether or not he was in good health, in good shape and
> particularly given the information made available to them, so they
> had a right to go in to his apartment and check on his well-being
> given the history in this particular case.

Suppression Tr. at 110-12. After reviewing the transcript of the suppression hearing, this Court

endorses the above findings and conclusions of the county court.

Since Campbell has presented no evidence that the state courts failed to conduct a

reasoned method of inquiry into the relevant questions of fact and law concerning his

suppression motion, the Fourth Amendment claims asserted by Campbell in his second ground

for relief must be denied. See Capellan, 975 F.2d at 70 (citation omitted); Quick v. Allard, No.

04-CV-2069, 2004 WL 2326376, at *2 (E.D.N.Y. Oct. 12, 2004), Morales v. Walsh, No.

02-CV-6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct. 30, 2003) (denying Fourth Amendment

claims, including claim of unlawful arrest, under Stone doctrine); McPherson, 2003 WL

22405449, at *15-16; Martinez, 2000 WL 888031, at *7.

### 3. **Miranda Claims**

In his third ground for relief, Campbell argues that the county court improperly allowed

the prosecution to use his statements to the police on March 18, 1998 as evidence against

petitioner at his trial. Am. Pet. at 12-13.

### i. **Clearly Established Supreme Court Precedent**

Under Miranda, "a person questioned by law enforcement officers after being 'taken into

custody or otherwise deprived of his freedom of action in any significant way' must first 'be

warned that he has a right to remain silent, that any statement he does make may be used as

15

evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).  However, law enforcement agents are only required to administer Miranda warnings when the suspect interrogated by the police is "in custody."  Thompson v. Keohane, 516 U.S. 99, 102 (1995).  In determining whether an individual is "in custody" such that Miranda warnings are constitutionally required, courts are to consider whether a reasonable person would have believed he was at liberty to end the interrogation, taking into account the specific circumstances surrounding the subject questioning.  Thompson, 516 U.S. at 111.

### ii. Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent

Initially, the Court notes that claims alleging a violation of one's Miranda rights are grounded in both the Fifth Amendment's guarantee that no person shall be compelled to be a witness against himself in a criminal case, as well as the Fourteenth Amendment's provision guaranteeing individuals the right to due process of law.  See Withrow v. Williams, 507 U.S. 680, 688-89 (1993) (citations omitted).  Thus, the Stone doctrine – which relates to Fourth Amendment claims – does not preclude federal habeas review of Miranda-based claims.  See Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted); Bilbrew v. Garvin, No. 97-CV-1422, 2001 WL 91620, at *6 (E.D.N.Y. Jan. 10, 2001) ("the Supreme Court [has] rejected [Stone's] application to alleged Miranda violations") (citations omitted); Hoover v. Leonardo, No. 00-CV-2662, 1996 WL 1088204, at *6 (E.D.N.Y. June 11, 1996) ("[a]lthough Stone ... bars habeas review of unconstitutional search and seizure claims that have been fully litigated in state court, Miranda claims are excepted from this prohibition") (citing Withrow); Ford v. Hoke, No. CV-91-4093, 1994 WL 594283, at *4 (E.D.N.Y. Oct. 25, 1994), aff'd, 122

F.3d 1056 (2d Cir. 1995).

The state court records reflect that at the conclusion of the March 22, 1999 suppression

hearing, Judge Smith determined that all of the statements made by Campbell on March 18, 1998

until he left his residence were admissible because he was not in custody at the time he uttered

those statements. See Suppression Tr. at 113. However, the county court determined that once

Campbell left his house and was placed in handcuffs, he was "in custody" for Miranda purposes

and his statement to the police outside his residence on that date was therefore inadmissible at

trial because petitioner had not both been advised of and waived his Miranda rights prior to

making that statement. Suppression Tr. at 113-14.[6]

In his pro se appellate brief, Campbell argued that all of his statements to law

enforcement agents on the day of his arrest should have been suppressed, and that the county

court erred in allowing some of those statements to be introduced against him at his trial. See

Pro Se Appellate Brief at 26. The Appellate Division found Campbell's Miranda claim to be

without merit. Campbell, 279 A.D.2d at 798.[7]

Under the AEDPA, a state court's factual findings at a suppression hearing are presumed

_____

[6]    After he was placed in handcuffs on March 18, 1998, Campbell stated, in
substance, that he "intended to engage in a shoot out with the police." Suppression Tr. at 114.

[7]    This Court notes that although the Third Department denied Campbell's
Miranda claim – and other arguments asserted by him in his pro se appellate brief without
referring explicitly to relevant federal case law, the Appellate Division nevertheless noted that
it had considered the "remaining contentions" raised by Campbell in his appeal (including his
pro se appellate brief) and found them "equally without merit." Campbell, 279 A.D.2d at
798. Since there is no basis for believing that the Third Department rejected such claims on
non-substantive grounds, that determination of the Appellate Division must be reviewed
under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1). See Sellan, 261 F.3d at
311; Stallings v. Woods, No. 04 CV 4714, 2006 WL 842380, at *13 (E.D.N.Y. Mar. 27,
2006) (citing Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).

to be correct, and the petitioner has the burden of overcoming that presumption by clear and convincing evidence.  See Sorto v. Herbert, 2004 WL 2852358, at *2 (E.D.N.Y. Dec. 13, 2004) (citing 28 U.S.C. § 2254(e)(1)); James v. Walker, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28, 2003), aff'd, 2004 WL 2496742, at *6 (2d Cir. 2004).  However, "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards."  Oyague v. Artuz, 393 F.3d 99, 104 (2d Cir. 2004).  This Court therefore considers Campbell's habeas claim alleging a violation of Miranda (see Am. Pet. at 12-13) mindful of these principles.

"The test used in determining whether a defendant was in custody is an objective one.[8] Generally, absent an arrest, an individual is not 'in custody,' "unless the authorities affirmatively convey the message that the defendant is not free to leave."  United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992).  However, where the questioning was conducted in a custodial setting in which "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak" existed, the individual is "in custody" for purposes of Miranda.  See United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004) (citation omitted).

In the case sub judice, the statements made by Campbell which he believes were improperly admitted into evidence against him were made by him at his residence, a factor that

---

[8]     Although respondent argues that Campbell's **subjective** belief that the individuals who identified themselves as law enforcement agents were not, in fact, police officers, is a factor that this Court should consider in evaluating Campbell's Miranda claim, see Resp. Mem. at 12-13, see also Trial Tr. at 442, this argument appears to overlook the fact that courts are to make a determination as to the custodial status of an individual based upon "the objective circumstances of the interrogation," rather than the "subjective views harbored by either the interrogating officers or the person being questioned."  Harris v. Woods, No. 05 CIV. 5582, 2006 WL 1140888, at *18 (S.D.N.Y. May 1, 2006) (internal quotations and citations omitted).

weighs against a finding that he was in custody.  See Mitchell, 966 F.2d at 99.  Furthermore, Campbell does not allege, nor does the record support, a finding that he was told that he was not free to leave his home.  This factor also supports the trial court's determination that Campbell was not in custody at the time he made the statements to law enforcement agents while in his residence.  E.g., United States v. Waters, 786 F.Supp. 1111, 1119 (N.D.N.Y. 1992) (Munson, S.J.).  Furthermore, Campbell himself testified at trial that the officers specifically informed him that they did not want to arrest Campbell.  See Trial Tr. at 443.  Such a statement is an "an important factor" that weighs against a finding that a suspect was in custody.  United States v. Newton, 181 F.Supp.2d 157, 174 (E.D.N.Y. 2002).  Thus, after considering this matter, the Court agrees with the county court's determination that until Campbell left his home and was placed under arrest by law enforcement agents, he was not "in custody" such that the police were required to advise Campbell of his Miranda rights   Therefore, his statements to the police prior to that time were properly admitted into evidence against him despite the fact that law enforcement agents had not advised Campbell of his Miranda rights.  Therefore, the Court denies his third ground for relief.

### 4.   Grand Jury Claims

In his fourth ground for relief, petitioner argues that he was never notified by the district attorney as to when he was going to present his case against Campbell before the grand jury, and that therefore he was wrongfully denied his right to testify before that accusatory body.  Am. Pet. at 13.  In his fifth ground for relief, petitioner cites several comments purportedly made by individuals who testified before the grand jury and argues that such statements were "perjured and prejudicial."  Am. Pet. at 14.  Petitioner contends that because perjurious testimony was

presented to the grand jury, his convictions should be overturned.  Id.

Unfortunately for petitioner, federal courts have not recognized a constitutional right to indictment by a grand jury in state criminal prosecutions.  See Smith v. Walsh, No. 00-CV-5672, 2003 WL 22670885, at *7 (E.D.N.Y. Oct. 20, 2003); see also Alexander v. Louisiana, 405 U.S. 625, 633 (1972).  Therefore, claims based on alleged defects in grand jury proceedings are not reviewable in a petition for a writ of habeas corpus relief unless they present an independent federal constitutional claim.[9]  See Lopez v. Riley, 865 F.2d 30, 32-33 (2d Cir. 1989); Barnes v. Giambruno, No. 01 CIV. 8965, 2002 WL 850020, at *7 (S.D.N.Y. May 2, 2002) ("[i]t is clearly established in this Circuit that [grand jury claims are] not cognizable [under § 2254]") (citing Lopez).  Moreover, even assuming the existence of a federal right to indictment by a grand jury, Campbell would nonetheless not be entitled to habeas relief on this claim because any error in the grand jury proceedings was necessarily cured by his subsequent conviction by a petit jury on the charges contained in the Indictment.  As the Supreme Court has explained:

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant[] w[as] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

United States v. Mechanik, 475 U.S. 66, 70 (1986); see also United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (claim that "grand jury was presented with perjured testimony and with

---

[9]      A criminal defendant's right to testify before the grand jury in New York is statutorily derived.  See CPL § 190.50(5)(a) ([a]lthough not called as a witness by the people or at the instance of the grand jury, a person has a right to be a witness in a grand jury proceeding ... (a) When a criminal charge against a person is being or is about to be or has been submitted to a grand jury....").

altered tape recordings" without substance, "[t]he jury's verdict of guilty ... rendered harmless any error resulting from the evidence used to indict him"); Green v. Artuz, 990 F.Supp. 267, 273 n.8 (S.D.N.Y. 1998) (petitioner's claim that he was denied right to testify before grand jury not cognizable in § 2254 proceeding); see also Mariani v. Kelly, No. 97-CV-384 (Dkt. No. 36), 2001 WL 1860961, at *5 (N.D.N.Y. Jan. 17, 2001) (Sharpe, M.J.) (citations omitted), adopted Mariani v. Kelly, No. 97-CV-384 (Dkt. No. 38) (N.D.N.Y. Sept. 27, 2001) (Scullin, C.J.), appeal dismissed, Mariani v. Kelly, No. 97-CV-384 (Dkt. No. 45) (2d Cir. Nov. 13, 2001); Beverly v. Walker, 899 F.Supp. 900, 908 (N.D.N.Y. 1995) (Scullin, J.) (citing Mechanik), aff'd, 118 F.3d 900 (2d Cir. 1997).

In light of the foregoing, this Court denies Campbell's fourth and fifth grounds for relief, both of which seek federal habeas intervention due to claimed deficiencies and/or improprieties relating to the grand jury proceedings below.

### 5.   Right to Speedy Trial

In his sixth ground, Campbell argues that his conviction must be reversed in that it was obtained in violation of his constitutional right to a speedy trial.  Am. Pet., Ground Six.

### i.   Clearly Established Supreme Court Precedent

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."  U.S. Const., Amend. VI.  In considering whether this right to a speedy trial has been violated, a court must consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Barker v. Wingo, 407 U.S. 514, 530 (1972).

### ii.   Contrary to, or Unreasonable Application of, Supreme Court Precedent

21

Campbell argued in his pro se appellate brief that, as a result of various matters that occurred subsequent to his arrest on March 18, 1998, his "trial was delayed for 15 months and [he] was only ... marginally more prepared [for trial] than the day I was arrested." See Pro Se Appellate Brief at 35.  In evaluating Campbell's federal habeas claim which similarly alleges that a fifteen month delay between his arrest and the commencement of his trial violated his federal right to a speedy trial (see Am. Pet. at 14-16), this Court must determine whether the Third Department's decision rejecting Campbell's speedy trial claim, see Campbell, 279 A.D.2d at 798, is either contrary to, or represents an unreasonable application of, Barker and its progeny.

Considering first the length of the delay, this Court notes that Campbell was arrested on March 18, 1998 (Trial Tr. at 284, 290-91) and his jury trial on the charges contained in the Indictment commenced May 4, 1999 (Trial Tr. at 1), less than fourteen months after his arrest. The United States Supreme Court, as well as courts within the Second Circuit, have found no constitutional speedy trial violation to have occurred in cases in which the period of time between a defendant's arrest and trial was substantially longer than one year.  See Barker, 407 U.S. at 533-34 (over five years); Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988) (over seven years); United States v. Lane, 561 F.2d 1075, 1078 (2d Cir. 1977) (fifty-eight months); United States v. Penn, ___F.Supp.2d ___, No. 93CR.1024, 2006 WL 1586561, at *1-2 (S.D.N.Y. June 9, 2006) (no speedy trial violation despite fact that nearly twelve **years** had elapsed between indictment and commencement of trial); Holden v. Miller, No. 00Civ.0926, 2000 WL 1121551, at *10 (S.D.N.Y. Aug. 8, 2000) (two and one-half year delay).  Thus, this factor does not support Campbell's speedy trial claim.

In analyzing the second Barker factor, the Supreme Court has noted that:

> [D]ifferent weights should be assigned to different reasons.  A
> deliberate attempt to delay the trial in order to hamper the defense
> should be weighted heavily against the government.  A more
> neutral reason such as negligence or overcrowded courts should be
> weighted less heavily but nevertheless should be considered since
> the ultimate responsibility for such circumstances must rest with
> the government rather than with the defendant.  Finally, a valid
> reason, such as a missing witness, should serve to justify
> appropriate delay.

Barker, 407 U.S. at 531; see also Flowers v. Warden, 853 F.2d 131, 134 (2d Cir. 1988).  Nothing

in the record suggests that the prosecution sought to delay the criminal proceedings concerning

Campbell in order to hamper his defense.  To the contrary, Campbell himself admits in his

amended pleading that much of the claimed delay between his arrest and the commencement of

his trial was attributable either to matters undertaken by defense counsel relative to his

representation of Campbell or which related to issues concerning petitioner's competency to

stand trial.  See Am. Pet. at 15-16.  Since there is no evidence that the State sought to delay

Campbell's trial in an attempt to hamper petitioner's defense, this factor does not weigh in his

favor.  Vaughn v. Giambruno, No. 03CIV.5403, 2005 WL 1995391, at *6 (S.D.N.Y. Aug. 19,

2005); Howard v. Lacy, 58 F.Supp.2d 157, 168 (S.D.N.Y. 1999) (citations omitted).

Addressing next the factor that considers the timeliness of the petitioner's assertion of his

speedy trial right, this Court notes that because no speedy trial claim was asserted by Campbell

until the time of his appeal, this factor also weighs against Campbell's speedy trial claim.  See

Pjetrovic v. Bennett, No. 00CIV.0398, 2002 WL 32780, at *6 (S.D.N.Y. Jan. 3, 2002) (petitioner

who waited more than ten months after his indictment to assert speedy trial claim did not assert

such claim in a timely fashion under Barker).

In discussing the final Barker factor, the Second Circuit has explained that "[a]lthough 'a

showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a [constitutional] speedy trial violation in the absence of genuine prejudice.'" United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997) (quoting Rayborn, 858 F.2d at 94); see Dunavin v. Leonardo, No. 95-CV-296, 1997 WL 151771 at *15 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J.) ("[i]n the absence of a showing of prejudice, courts generally will not find a speedy trial violation unless all of the remaining Barker factors weigh heavily in favor of the [petitioner]").  In the present action, Campbell has not demonstrated that he was prejudiced by the delay in his arraignment or the other underlying criminal proceedings. Although Campbell argues that his "house and other evidence [was] irretrievably lost," as a result of the claimed delay, see Am. Pet. at 16, he fails to articulate how the claimed delay in the proceedings caused him to lose the title to his home, or how the claimed delay prevented Campbell from securing evidence favorable to his defense from either his home or from other sources.  Thus, this factor does not weigh in his favor.

Federal courts must "engage in a difficult and sensitive balancing process" when considering the Barker factors.  Howard, 58 F.Supp.2d at 166 (citation omitted).  Having considered these factors in conjunction with the facts of this case and the relevant circumstances, this Court finds that the county court properly denied Campbell's speedy trial claim.  Therefore, the undersigned concludes that the Appellate Division's decision rejecting this claim in the context of Campbell's direct appeal, see Campbell, 279 A.D.2d at 798, is neither contrary to, nor an unreasonable application of, Barker.  Therefore, Campbell's sixth ground for relief is denied.

### 6.  Clothing Worn By Campbell At Trial

In his seventh ground for relief, Campbell claims that he was wrongfully forced to wear

prison attire during the course of the criminal proceedings below, and that, as a result, he was deprived of his right to a fair trial.  Am. Pet., Ground Seven.  In support of this claim, Campbell cites to several instances during the course of his trial when individuals identified him by reference to his prison clothing, and further argues that although he advised his attorney that he did not wish to wear such clothing at his criminal trial, his counsel nevertheless failed to rectify the situation.  Am. Pet. at 17.

**i.     Clearly Established Supreme Court Precedent**

The right to a fair trial is guaranteed by the United States Constitution.  United States v. Martinez-Salazar, 528 U.S. 304, 313 (2000); Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) ("the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal") (citing Withrow, 421 U.S. at 46); see also U.S. Const., Amend. VI. (in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury").  In order to ensure a criminal defendant's right to a fair trial, the Supreme Court has determined that an accused cannot be forced "to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system."  Estelle v. Williams, 425 U.S. 501, 504 (1976) (citations omitted).  However, the Supreme Court has observed that there is no per se defect in a criminal proceeding where the defendant wears prison attire without objection. Estelle, 425 U.S. at 511-12.  Thus, "the failure [of the defendant] to make an objection to the court as to being tried in [prison] clothes, for whatever reason, is sufficient to negate the presence of ... a constitutional violation."  Estelle, 425 U.S. at 512.[10]

---

[10]     The Estelle Court suggested that it could be a reasonable defense strategy "to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."  Estelle, 425 U.S. at 507-08.

25

ii.     **Contrary to, or Unreasonable Application of, Supreme Court Precedent**

Initially, this Court notes that the record establishes that Campbell was wearing prison clothing during the course of his trial.  For example, in instructing the jury at the conclusion of Campbell's trial, the county court specifically stated:

> And, ladies and gentlemen of the jury, as you no doubt observed the defendant, Mr. Campbell, has been wearing Broome County Sheriff's inmate coveralls and is incarcerated in the Broome County Jail.

Trial Tr. at 540.  Thus, it is patent that Campbell wore jail clothing during the course of his criminal trial, including on those occasions during the trial when the jury was present.  However, although Campbell now states that he "complained to [defense counsel] about being forced to trial in jail clothes," Am. Pet. at 17, he never cites any portion of the record that supports such claim or which otherwise suggests that he objected to wearing prison attire during the course of his trial.  Additionally, although Campbell argues numerous theories in support of his claim that his defense counsel rendered ineffective assistance, see Am. Pet. at 18-21, petitioner never asserts in his ineffectiveness claim that his trial counsel rendered ineffective assistance by failing to object to the clothing Campbell wore during the course of his trial.

Since there is no evidence that Campbell was forced to wear prison attire at his trial, this Court finds that the Third Department's decision denying this aspect of Campbell's appeal, see Campbell, 279 A.D.2d at 798, is neither contrary to, nor represents an unreasonable application of, Estelle and its progeny.  Therefore, Campbell's seventh ground for relief is denied.

7.     **Perjurious Testimony**

In his eighth ground in support of his federal habeas petition, Campbell argues that

26

numerous witnesses testified falsely for the prosecution during the course of his criminal trial, and that as a result he is entitled to federal habeas relief.  Am. Pet., Ground Eight.

### i.        Clearly Established Supreme Court Precedent

Campbell's claim that he was convicted as a result of perjurious testimony is a matter which brings into play the above-referenced constitutional mandate concerning a criminal defendant's right to a fair trial.  E.g. Martinez-Salazar, 528 U.S. at 313; Bracy, 520 U.S. at 904-05.  Additionally, the Supreme Court has noted that a conviction obtained by the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  United States v. Agurs, 427 U.S. 97, 103 (1976) (footnote omitted).  Additionally, "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  Napue v. Illinois, 360 U.S. 264, 269 (1959).

### ii.       Contrary to, or Unreasonable Application of, Supreme Court Precedent

The Appellate Division found Campbell's claim alleging the receipt of perjurious testimony at his trial to be "without merit."  See Campbell, 279 A.D.2d at 798.  The undersigned must therefore ascertain whether that finding is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.

To prevail on this claim, Campbell must initially demonstrate that perjury was in fact committed at his trial.  See United States v. White, 972 F.2d 16, 20 (2d Cir. 1992); Vail v. Walker, No. 96-CV-578, 1997 WL 695583, at *5 (N.D.N.Y. Nov. 4, 1997) (Homer, M.J.) (citing White), adopted Vail v. Walker, No. 96-CV-578 (Dkt. No. 49) (N.D.N.Y. Aug. 24, 1999) (Scullin, J.), appeal dismissed, Vail v. Walker, No. 99-2554 (2d Cir. Mar. 23, 2001).  In the

present case, Campbell's claim of perjury is based upon discrepancies which he claims exists

between the trial testimony of prosecution witnesses and: a) such witnesses' grand jury

testimony; and/or b) Campbell's trial testimony.  See Am. Pet. at 17-18.  However, such

discrepancies may well be the product of "flaws of memory as opposed to perjurious

statements."  United States v. Shoals, No. 05-CR-64, 2006 WL 1457707, at *2 (N.D.Ind. May

23, 2006).  "[D]iscrepancies and inconsistencies in the record" are not "proof" that perjury was

committed at trial.  Edwards v. Dretke, No. CIV.05-0526, 2005 WL 3504121, at * 6 (S.D.Tex.

Dec. 21, 2005); see also Johnson v. Walsh, 01-CV-1651, 2005 WL 928616, at *16 (N.D.N.Y.

Apr. 20, 2005) (DiBianco, M.J.) ("[t]he fact that the victim testified inconsistently may affect her

credibility in the eyes of the jury, but it does not show that she was lying"), adopted, Johnson v.

Walsh, 01-CV-1651 (Dkt. No. 26) (N.D.N.Y. May 13, 2005) (Sharpe, J.); United States ex rel.

Blumenberg v. Frey, No. 04 C 3260, 2005 WL 326976, at *2 (N.D.Ill. Feb. 9, 2005) ("At most,

the discrepancies in [witness's] testimony went to the weight of his testimony.  It is the province

of the trier of fact to resolve conflicts in testimony and to make credibility determinations");

United States v. Huggins, No. CR-03-091, 2004 WL 2434301, at *1 (D.Del. Oct. 21, 2004) (any

discrepancies of record suggest, at most, misstatements, not perjury) (footnote and citation

omitted).  Since the only "proof" provided by Campbell in support of his claim of perjury is

based upon inconsistencies in the testimony of some of the prosecution witnesses, as well

differences between the testimony of prosecution witnesses and petitioner's own trial testimony,

Campbell has not established that any of the testimony upon which this aspect of his amended

petition is based was, in fact, perjurious.

     Additionally, even assuming, arguendo, that some of the witnesses at Campbell's trial

committed perjury, the undersigned notes that "[a] showing that perjured testimony was introduced at trial, without more, does not establish a violation of due process and does not warrant habeas relief." Chamberlain v. Mantello, 954 F.Supp. 499, 507 (N.D.N.Y. 1997) (Kahn, J.) (citing Sanders v. Sullivan, 863 F.2d 218, 222 (2d Cir. 1988)). Rather, before relief may be granted on such a claim, the petitioner must demonstrate that the perjured testimony was "material," i.e., that the receipt of such testimony "undermine[d] confidence in the outcome of the trial." Chamberlain, 954 F.Supp. at 507 (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). Where the prosecution is unaware of the claimed perjury, the petitioner must establish that the jury "probably would have acquitted [the defendant] in the absence of the false testimony." United States v. Moore, 54 F.3d 92, 99 (2d Cir. 1995) (internal quotation marks and citation omitted); see also Johnson, 2005 WL 928616, at *16 (citing United States v. Wong, 78 F.3d 73, 81 (2d Cir. 1996)) (other citations omitted).

In the present case, petitioner has not alleged – must less established – that the prosecutor was aware of the perjurious testimony allegedly provided by certain of the witnesses at Campbell's trial. Moreover, this Court has reviewed the instances of perjury cited by Campbell in support of this claim, see Am. Pet. at 17-18, and finds that such testimony, whether viewed individually or in the aggregate, was not "material" in the sense that the disputed testimony undermined confidence in the outcome of Campbell's trial. Specifically, this Court concludes that, in light of the substantial evidence presented at trial that established Campbell's guilt of the charged crimes, there is no possibility that the jury would have acquitted Campbell as to either charge even in the absence of the testimony that petitioner now claims is perjurious. Therefore, the Court denies Campbell's eighth ground for relief.

### 8.        Ineffective Assistance of Counsel

In his ninth ground, Campbell argues that his trial attorney rendered ineffective assistance.  <u>See</u> Am. Pet., Ground Nine.  In his fourteenth claim for relief, he argues that he received the ineffective assistance of appellate counsel.  <u>See</u> Am. Pet., Ground Fourteen.

### i.        Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688-90 (1984); <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in <u>Strickland</u>).

Moreover, it is well-settled that the Sixth Amendment's right to the effective assistance of counsel requires that indigents be provided with effective counsel for their first appeal as of right.  <u>Douglas v. California</u>, 372 U.S. 353, 358 (1963).  Consequently, an individual is entitled to the effective assistance of appellate counsel.  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970).  The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in <u>Strickland</u>.  <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 287-89 (2000); <u>Penson v. Ohio</u>, 488 U.S. 75, 86-88 (1988).

30

ii.      **Contrary to, or  Unreasonable Application of, Clearly
         Established Supreme Court Precedent**

a.      **Trial Counsel**

In support of his federal claim that his trial attorney rendered ineffective assistance,

Campbell argues, as he did in his pro se appellate brief, that trial counsel wrongfully failed to,

inter alia: 1) utilize a demonstration at trial which Campbell claims would have established that

he could not have seen the officer at whom he allegedly fired his weapon; 2) contact the

insurance company with which Campbell had secured homeowners insurance in order to

establish that Campbell anticipated receiving insurance proceeds with respect to his Amsbry

Street residence; 3) failed to secure evidence favorable to Campbell's defense; 4) pursue a

justification defense regarding the criminal charges; 5) seek dismissal of the Indictment based

upon an alleged speedy trial violation; 6) seek a change of venue due to the publicity that

surrounded the criminal proceedings related to Campbell; 7) lodge appropriate objections during

the course of petitioner's trial; and 8) call character witnesses to testify in Campbell's defense.

See Am. Pet., Ground Nine.  Additionally, imbedded in Campbell's ground for relief alleging a

speedy trial violation is a claim that an attorney who represented Campbell during various

pretrial matters labored under a conflict of interest.  See Am. Pet. at 16; see also Pro Se

Appellate Brief at 37-41.

The Third Department found Campbell's claim alleging ineffective assistance of trial

counsel to be without merit.  Campbell, 279 A.D.2d at 798.  Therefore, the undersigned

considers whether that determination is either contrary to, or represents an unreasonable

application of, Strickland.

Addressing first petitioner's claim that his attorneys failed to gather evidence favorable to

31

Campbell,[11] Am. Pet. at 21, the Court notes that the only specific allegations Campbell asserts in support of his claim that defense counsel failed to perform an adequate pretrial investigation relates to Campbell's argument that:  i) he was scheduled to receive a check in the amount of $27,098.03 from an insurance company, which Campbell suggests would have demonstrated that he did not have a motive to engage in criminal conduct on March 18, 1998; see Am. Pet. at 2, 19; and ii) counsel did not verify that Campbell's residence was both heated and stocked with food on that date, which evidence petitioner argues could have been used by the defense to rebut the prosecution's claim that entry onto the property was necessary because the apartment was uninhabitable.  See Appendix to Amended Petition ("Appendix") at (unnumbered) C61;[12] see also Am. Pet. at 19.

As to Campbell's general assertion that his attorneys failed to perform an adequate investigation on behalf of petitioner, see Am. Pet. at 19, the Court notes that "[a] petitioner's 'bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.'"  Atkinson v. United States, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.) (quoting Sheedy v. United States, No. 96-CV-1289, 1997 WL 394664, at *9 (N.D.N.Y. July 8, 1997) (Munson, S.J.)) (other quotation and citations omitted)).

Turning to the specific examples cited by Campbell in support of this aspect of his

---

[11]     Campbell was initially represented by Robert O'Leary of the Broome County Public Defender's Office, however prior to trial the county court granted Campbell's request for replacement counsel and appointed Michael Sullivan, Esq. to represent petitioner.  See Transcript of Pretrial Hearing in People v. Campbell, No. 98-229 (1/21/99 ) ("January, 1999 Hearing") at 10-11.

[12]     Although Campbell did not number the page in his supporting appendix as "C61," the page immediately following the cited page was numbered by Campbell at "C62."

ineffectiveness claim, the Court notes that evidence that petitioner may have been entitled to receive insurance proceeds relating to his residence would in no way have cast doubt on the testimony of Brozost or the police officers who provided detailed testimony regarding Campbell's felonious conduct on March 18, 1998.  Additionally, none of the crimes with which Campbell was charged required the prosecution to establish a motive for his actions.  See, e.g., N.Y. Penal L. §§ 110.00, 125.27, 120.10 and 120.25.

As to Campbell's claim that his attorney failed to secure evidence which could have established that petitioner's residence was habitable, the Court notes that Brozost testified at trial that the Broome County DSS was notified by a local utility company in October, 1997 that the heat to Campbell's residence had been turned off.  See Trial Tr. at 199.  Brozost further testified that he had discussed that fact with Campbell several times after that date and that Campbell never stated that utilities to his residence had been reconnected.  Trial Tr. at 199.  Furthermore, Judge Smith found that both Brozost and the police were legally obligated to ensure that Campbell – who had been recently released from a sanitarium and had been declared a person in need of supervision by the Broome County DSS – was not a danger to himself or others.  See Suppression Tr. at 110.  Accordingly, even assuming, arguendo, that Campbell's counsel had presented evidence which suggested that Campbell could properly inhabit the Amsbry Street residence, such evidence would not have rendered the investigation undertaken by law enforcement agents at Campbell's home, which ultimately resulted in Campbell's arrest, improper.  Thus, this aspect of Campbell's amended petition is meritless.

Next, the Court notes that much of the remaining conduct upon which Campbell relies in support of his claim alleging ineffective assistance clearly relates to the trial strategy employed

by his counsel.  For example, counsel's failure to: 1) engage in a demonstration at trial; 2) pursue

a justification defense; 3) seek dismissal of the Indictment; 4) request a change of venue; 5)

lodge unspecified objections at trial; and 6) call witnesses in Campbell's defense to the charges

against him are all examples of strategic choices made by Campbell's counsel.  Such choices on

the part of counsel "are virtually unchallengeable" in the context of federal habeas corpus

proceedings.  Wiggins, 539 U.S. at 521-22; see also Gersten v. Senkowski, 426 F.3d 588, 607

(2d Cir. 2005) (citing Strickland), cert. denied Artuz, Supt., Clinton v. Gersten, Ben, ___ U.S.

___, ___ S.Ct.____, 2006 WL 1584454 (June 12, 2006).  As the court sagely noted in Nieves v.

Kelly, 990 F.Supp. 255 (S.D.N.Y. 1997):

> Generally, the decision whether to pursue a particular defense is a
> tactical choice which does not rise to the level of a constitutional
> violation.... [T]he habeas court will not second-guess trial strategy
> ... especially where the petitioner has failed to identify any specific
> evidence or testimony that would have helped his case if presented
> at trial.

Nieves, 990 F.Supp at 264 (citations and internal quotations omitted).  Petitioner has wholly

failed to establish that the above-mentioned strategic choices of counsel were objectively

unreasonable.  Nor has petitioner demonstrated that he was prejudiced, in any way, by the

actions (or inactions) of counsel cited above.

Finally, as to Campbell's claim which argues that his pretrial counsel labored under a

conflict of interest, see Am. Pet. at 16, this Court acknowledges that a defendant's right to

conflict-free representation of counsel is clearly established federal law as determined by the

Supreme Court.  See Frase v. McCray, No. 01-CV-1704, 2003 WL 57919, at *6 (N.D.N.Y. Jan.

8, 2003) (Sharpe, M.J.) (citing Wood v. Georgia, 450 U.S. 261, 271 (1981); Cuyler v. Sullivan,

446 U.S. 335, 346 (1980)) (other citation omitted), adopted Frase v. McCray, No. 01-CV-1704,

Dkt. No. 18 (N.D.N.Y. July 22, 2003) (Hurd, J.).  However, Campbell has utterly failed to

demonstrate that: 1) any conflict of interest existed between his pretrial counsel and Campbell;

and 2) such claimed conflict prejudiced Campbell in any way.  In this regard, the Court notes

that at a pretrial hearing relating to Campbell's request for replacement counsel at which he

argued to the county court that a conflict of interest existed between himself and attorney

O'Leary, the trial court noted that although an individual's request for replacement counsel

should be granted where such a conflict exists, a mere claim that a conflict existed was

insufficient to warrant the granting of replacement counsel.  Specifically, that court sagely

observed that "just telling [the court] there is a conflict doesn't mean that there is, in fact, a

conflict."  See Transcript of Pretrial Hearing in People v. Campbell, No. 98-229 (10/9/98)

("October, 1998 Transcript") at 4.  Since Campbell failed to articulate the basis for his claimed

conflict, the trial court denied his request for replacement counsel at that time.  Id. at 4-5.[13]

Petitioner has similarly failed to establish in the present action that any attorney who represented

Campbell in the criminal proceedings below labored under a conflict of interest.  Thus, this final

theory in support of his ineffective assistance of trial counsel claim is without substance.

### b.    Appellate Counsel

In both his pro se appellate brief and the present action, Campbell claimed that his

appellate counsel was ineffective because he failed to "communicate" with petitioner.  See Pro

---

[13]      On January 21, 1999, the County Court appointed replacement counsel for
Campbell after determining that he was unwilling to work with attorney O'Leary or any other
attorney at the Broome County Public Defender's Office.  See January, 1999 Hearing at 10-
11.  Significantly, however, Judge Smith never determined at that hearing – or at any other
time during the course of the criminal proceeding below – that any conflict of interest existed
between attorney O'Leary and Campbell.

Se Appellate Brief at 53; Am. Pet., Ground Fourteen.  Campbell further argues that although he

provided his appellate counsel with a copy of the pro se appellate brief so that counsel could

incorporate those arguments in his appellate brief, counsel "never responded or used the

information [petitioner] sent" and instead argued "worthless issues" on appeal.  Am. Pet. at 26.

Petitioner additionally claims that counsel never obtained Campbell's consent to assert the

arguments which counsel ultimately raised on appeal.  Am. Pet. at 26.

        The Appellate Division denied this aspect of Campbell's appeal.  See Campbell, 279

A.D.2d at 798.  This Court must therefore determine whether that determination is either

contrary to, or represents an unreasonable application of, the above-cited Supreme Court

precedent.

        An appellate counsel "need not (and should not) raise every nonfrivolous claim, but

rather may select from among them in order to maximize the likelihood of success on appeal."

Robbins, 528 U.S. at 287-88.  There is a "strong presumption of attorney competence," and the

court's review of an appellate counsel's performance is "highly deferential."  Kimmelman v.

Morrison, 477 U.S. 365, 381, 383 (1986).  As the Second Circuit observed in Sellan, the

"process of winnowing out weaker arguments on appeal and focusing on those more likely to

prevail, far from being evidence of incompetence, is the hallmark of effective appellate

advocacy."  Sellan, 261 F.3d at 317 (internal quotation and citations omitted); see also Brown v.

Filion, No. 03 CIV. 5391, 2005 WL 1388053, at *16 (S.D.N.Y. June 13, 2005) (citations

omitted), adopted, 2005 WL 2159675 (S.D.N.Y. Sept. 6, 2005).  Thus, to prevail upon a habeas

claim alleging a failure on the part of appellate counsel to raise a particular argument on appeal,

a petitioner must demonstrate that his counsel "omitted significant and obvious issues while

36

pursuing issues that were clearly and significantly weaker." <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2001).

As to Campbell's claim that his appellate counsel failed to communicate with petitioner, this Court notes that "'[a]n appellate attorney's failure to communicate with his or her client, by itself, does not constitute <u>per se</u> ineffective assistance of counsel.'"  <u>See</u> <u>McIntyre v. Duncan</u>, No. 03-CV-0523, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) (quoting <u>Buitrago v. Scully</u>, 705 F.Supp. 952, 955 (S.D.N.Y. 1989)).  Thus, "[a]lthough it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue." <u>McIntyre</u>, 2005 WL 3018698, at *3 (citation omitted).  Therefore, Campbell's assertion that his appellate counsel failed to consult with petitioner prior to filing the appellate brief, or incorporate in that appellate brief the arguments asserted by petitioner in his <u>pro se</u> appellate brief, does not, without more, establish that Campbell received ineffective assistance.

As to Campbell's claim that his attorney failed to argue "significant and obvious issues" and instead asserted "worthless" claims on appeal, <u>see</u> Am. Pet. at 25, the undersigned notes that this claim is principally rooted in his argument that his appellate counsel wrongfully failed to assert any of the claims Campbell raised in his <u>pro se</u> appellate brief in the counsel's brief.  <u>See</u> Am. Pet. at 26.  However, as is more fully discussed in this Memorandum-Decision and Order in conjunction with the denial of Campbell's federal habeas petition, the claims asserted by Campbell in his <u>pro se</u> appellate brief (and argued by petitioner as grounds for relief herein) are meritless.  Petitioner's appellate counsel therefore cannot be found to have rendered ineffective assistance by failing to assert such claims on appeal.  <u>See</u> <u>Funches v. Walsh</u>, No. 05 CIV. 2839,

37

2006 WL 1063287, at *14 (S.D.N.Y. Apr. 21, 2006) (citing Mitchell v. Scully, 746 F.2d 951,

955 (2d Cir. 1984)); see also Stapleton v. Greiner, No. 98 CV-1971, 2000 WL 1207259, at *13

(E.D.N.Y. July 10, 2000).

In sum, applying the required, deferential standard to the Appellate Division's rulings on

Campbell's claims of ineffective assistance concerning both trial and appellate counsel, the

undersigned finds that petitioner has not demonstrated that the Third Department's rejection of

those claims is either contrary to, or represents an unreasonable application of, the above-cited

Supreme Court precedent.  Therefore, this Court denies Campbell's ninth and fourteenth grounds

for relief.

### 9.    **Prosecutorial Misconduct**

In his tenth ground, Campbell argues that the prosecutor engaged in misconduct during

the course of the criminal proceedings below, and that the district attorney's misconduct "is

grounds for [sic] overturn my conviction and prohibition from retrial."  Am. Pet., Ground Ten.

Subsumed within this claim is Campbell's assertion that the prosecutor violated Campbell's right

to timely receive all Brady material[14] to which he was entitled.  Am. Pet. at 22.

### i.    **Clearly Established Supreme Court Precedent**

A criminal defendant's right to a fair trial is mandated by the due process clause of the

United States Constitution.  Albright v. Oliver, 510 U.S. 266, 273 n.6 (1994) (citing Agurs, 427

---

[14]    Brady v. Maryland, 373 U.S. 83 (1963).  In Brady, the Supreme Court held
"that the suppression by the prosecution of evidence favorable to an accused upon request
violates due process where the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.

U.S. at 107).[15]  For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).

**ii.**     **Contrary to, or Unreasonable Application of, Supreme Court Precedent**

**a.**     **Brady Claims**

Addressing first Campbell's Brady claims, the Court notes that to prove a Brady violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Campbell alleged on appeal, and asserts in the present application, that the prosecutor wrongfully failed to provide petitioner's attorney with Campbell's wallet, which was apparently taken by the police from petitioner on the day of his arrest, until after Brozost "left the stand," thereby precluding Campbell from being able to effectively impeach Brozost's testimony.[16]  Am.

---

[15]     "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment."  Adamson v. People of State of California, 332 U.S. 46, 53 (1947) (footnote omitted).

[16]     Petitioner asserts that his wallet contained a check in the amount of $325.00, and that had Campbell been able to refer to such check during the cross-examination of

39

Pet. at 22; see also Pro Se Appellate Brief at 42. Petitioner also argues that although his defense attorney requested copies of tape recordings made of calls placed to the 911 emergency operator on March 18, 1998, as well as tape recordings made of the radio calls between law enforcement agents on that date relating to Campbell, such copies were never provided to Campbell's trial attorney. Am. Pet. at 22; see also Pro Se Appellate Brief at 42.

As to Campbell's claim regarding the failure of the prosecution to turn over petitioner's wallet to defense counsel, the Court notes that at the conclusion of the May 3, 1999 competency hearing, Campbell's counsel requested that the district attorney turn Campbell's wallet over to defense counsel. See May, 1999 Competency Hearing at 82. Defense counsel never claimed that the prosecution failed to turn over that wallet in a timely fashion after such request.[17]

"[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." In re United States (United States v. Coppa), 267 F.3d 132, 142 (2d Cir. 2001) ("Coppa"); United States v. Earls, No. 03 CR. 0364, 2004 WL 350725, at *8 (S.D.N.Y. Feb. 25, 2004) (citing Coppa); United States v. Patterson, No. 02 CR. 0283, 2002 WL 31890950, at *11 (S.D.N.Y. Dec. 27, 2002) (citing Coppa). Thus, "[t]here is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." Coppa, 267 F.3d at 142 (citing Leka v. Portuondo, 257 F.3d

─────────────────────

Brozost, Campbell would have established that Brozost had "lied" during the course of his testimony. Am. Pet. at 22; see also Pro Se Appellate Brief at 42.

[17]    The Court notes that Campbell's counsel referred to the contents of Campbell's wallet, and successfully moved for the wallet's admission into evidence, at Campbell's trial. See Trial Tr. at 366-69.

89, 100 (2d Cir. 2001)).  Since Campbell did not demonstrate that the District Attorney failed to

timely provide defense counsel with Campbell's wallet, this aspect of petitioner's <u>Brady</u> claim is

plainly without merit.[18]

Turning to Campbell's claim regarding tape recordings made of the telephone calls made

to the 911 operator and calls that were placed between law enforcement agents on March 18,

1998, the Court notes that defense counsel requested that such evidence be provided to him in

his pretrial omnibus motion.  <u>See</u> Record on Appeal at R25, ¶¶ 6-7.  In responding to that

request, the District Attorney suggested that the requested tapes no longer existed.  Record on

Appeal at R33, ¶¶ 6-7.  Although the bad faith destruction of exculpatory evidence violates the

Constitution's guarantee of due process of law, <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988);

<u>see also</u> <u>Edmonds v. McGinnis</u>, 11 F.Supp.2d 427, 436  (S.D.N.Y. 1998) (citing <u>Youngblood</u>),

Campbell has not alleged, much less demonstrated, that the erasure of the requested tapes was

motivated by bad faith on the part of the district attorney.  To the contrary, the record establishes

that such tapes were erased in light of the standard practice of the authorities to only maintain

such recordings for a period of thirty days absent a specific request for a copy of a recording

made prior to its erasure.  <u>See</u> Record on Appeal at R33, ¶ 6.  Since copies of the tape recordings

no longer existed at the time of defense counsel's request, the prosecutor did not violate

---

[18]    Campbell's related argument that he is entitled to federal habeas relief because
the district attorney could not provide Campbell with either his wallet or its contents in April,
2002 following a Freedom of Information Act request apparently made by Campbell, <u>see</u> Am.
Pet. at 23; <u>see also</u> Appendix at C122, is similarly meritless because the defense was in
possession of the wallet, and its contents, at the time of Campbell's trial.  Moreover,
Campbell and his attorney were specifically advised by the trial court that once petitioner's
wallet was received into evidence, that wallet "would remain a permanent part of [the trial]
record and therefore inaccessible" after the trial.  Trial Tr. at 368.

petitioner's <u>Brady</u> rights by failing to provide defense counsel with copies of those tape recordings. <u>E.g.</u>, <u>Graham v. Ricks</u>, No. 9:02-CV-0303, 2004 WL 768579, *5 (N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (to prevail on <u>Brady</u> claim, a party must initially establish that the evidence sought, in fact, existed) (citations omitted), <u>appeal dismissed</u>, <u>Graham v. Ricks</u>, No. 04-2650 (2d Cir. Dec. 20, 2004).

### b.  <u>Remaining Claims Alleging Prosecutorial Misconduct</u>

Addressing the remaining aspect of this claim, the Court notes that Campbell's argument that the prosecutor engaged in misconduct by suborning perjurious testimony, <u>see</u> Am. Pet. at 22, is without merit because, as is discussed more fully above, petitioner has not established either: i) that perjury was committed at his trial; or ii) that the district attorney was aware of the allegedly perjurious testimony.

As to Campbell's claim that at the time of trial, the ballistics shield was "covered to hide the broken window," <u>see</u> Am. Pet. at 22, the undersigned notes that such shield was received into evidence at trial.  Trial Tr. at 304-05.  Testimony specifically addressing the fact that the shield was broken was adduced by the prosecutor, <u>see</u> Trial Tr. at 304-07, and defense counsel cross-examined Officer Grier about the crack in the shield.  Trial Tr. at 320-21.  Nothing in the record supports petitioner's apparent claim that the prosecution attempted to deceive the jury concerning the nature of the damage sustained by that shield as a result of Campbell's conduct.

Petitioner next argues that during the course of Brozost's testimony, that witness improperly referred to a criminal charge that was pending against Campbell.  However, Campbell does not cite any portion of the trial transcript where this statement was made by Brozost, and the Court's review of Brozost's trial testimony, Trial Tr. at 181-204, failed to reveal

42

any improper conduct on the part of Brozost (or the prosecution) regarding this issue.

Next, although the prosecutor admittedly did not permit Campbell to fully answer certain questions posed to him by the district attorney on three separate occasions during the course of Campbell's cross-examination, see Trial Tr. at 457, 463 and 471, the Court finds that such conduct, while perhaps discourteous, falls far short of the misconduct necessary to support a claim seeking federal habeas intervention based upon alleged prosecutorial misconduct.

Finally, the Court has reviewed the prosecutor's summation in conjunction with Campbell's claim that the district attorney's closing argument amounted to prosecutorial misconduct.  See Am. Pet. at 22-23; see also Trial Tr. at 506-27.  The Second Circuit has "repeatedly held that final arguments of counsel may be vigorous and robust if based on the evidence in the record." United States v. Smith, 778 F.3d 925, 929 (2d Cir. 1985); Trupin v. United States, No. 99 CIV. 105, 2000 WL 145102, at *7 (S.D.N.Y. Feb. 3, 2000) (citing Smith). As noted by the court in United States v. Myerson, 18 F.3d 153 (2d Cir. 1994), counsel "are entitled to broad latitude" in their closing arguments, "provided they do not misstate the evidence." Myerson, 18 F.3d at 163; see also United States v. Suarez, 588 F.2d 352, 354 (2d Cir. 1978) ("[b]oth prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments"); King v. Mantello, No. CV 98-7603, 2002 WL 32100251, at *14 (E.D.N.Y. Nov. 19, 2002) (Go, M.J.) (citation omitted), adopted, 2003 WL 1873618 (E.D.N.Y. Apr. 11, 2003); de la Cruz v. Miller, No. 97CIV.7785, 2000 WL 1279753, at *3 (S.D.N.Y. Sept. 8, 2000) (prosecutor is not precluded from "vigorous advocacy or the use of colorful adjectives during summation") (quotation and citation omitted).  This Court finds that the prosecutor's remarks during his summation did not rise to the level of misconduct sufficient

to warrant federal habeas intervention.[19]

Since Campbell has not established that the prosecutor engaged in misconduct during the criminal matter below, he has necessarily failed to demonstrate that the Appellate Division's decision denying that aspect of his appeal, Campbell, 279 A.D.2d at 798, is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent. Therefore, the undersigned denies Campbell's tenth ground for relief.

### 10. Judicial Misconduct

In his eleventh ground, Campbell argues that the trial court engaged in misconduct during the course of the criminal proceedings below. Am. Pet., Ground Eleven. In support of this argument, Campbell claims that the county court denied petitioner's request for replacement counsel until that court "knew [that petitioner's] house and evidence [that was] ... needed for trial was lost." Am. Pet. at 24. He further claims that Judge Smith wrongfully "ordered 3 psychiatric evaluations" relating to petitioner despite the fact that the court "knew [Campbell] was competent." Id. Campbell also argues that Judge Smith wrongfully permitted the district attorney to engage in misconduct by "mak[ing] unsworn statements, interrupt[ing] [petitioner's] answers, [and] ask[ing] questions about [Campbell] not retreating ... and questions with no factual basis." Am. Pet. at 24. Petitioner additionally asserts that the Judge Smith "gave an altered version" of a statement upon which the county court apparently relied in determining

---

[19]     Campbell's habeas claim which alleges that he is entitled to a new trial because of prosecutorial misconduct that purportedly occurred at Campbell's sentencing is rejected for two reasons. First, any misconduct on the part of the prosecutor at Campbell's sentencing – which necessarily occurred **after** his criminal trial had ended – could not have deprived Campbell of his right to a fair trial. Second, petitioner has not demonstrated that the prosecutor in fact engaged in any misconduct at the sentencing hearing. See, e.g., Sentencing Tr.

Campbell's sentence, <u>id.</u>, and wrongfully denied Campbell's request for transcripts that were necessary to pursue his appeal.  <u>Id.</u>

### i.        **Clearly Established Supreme Court Precedent**

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible."  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994); <u>see</u> <u>also</u> <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators").  In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties.  <u>See</u> <u>Bracy</u>, 520 U.S. at 909 (internal quotations and citations omitted).

### ii.        **Contrary to, or Unreasonable Application of, Supreme Court Precedent**

Nothing in the record supports Campbell's spurious claim that the county court denied his request for replacement counsel until the court was aware that evidence favorable to the defense had been destroyed.  To the contrary, the record establishes that Campbell advised the county court that his home had been "sold at auction" prior to May 13, 1998.  <u>See</u> Transcript of Pretrial Hearing in <u>People v. Campbell</u>, No. 98-229 (5/13/98) ("May, 1998 Transcript") at 2. Campbell did not request replacement counsel until several months later, on September 9, 1998. <u>See</u> October, 1998 Transcript at 2.  Since Campbell did not own his home at the time he made his request for replacement counsel, his claim that the county court's denial of Campbell's initial

motion for replacement counsel[20] was, in any way, conditioned upon his ownership interest in his residence is patently specious.

Next, although Campbell now claims that the county court wrongfully ordered him to undergo psychiatric testing in order to ensure that he was competent to stand trial, Am. Pet. at 24, this argument appears to overlook the fact that petitioner himself argued that he was **not** competent to stand trial less than four months before his criminal trial was scheduled to begin. See January, 1999 Transcript at 3 (Campbell arguing that his trial attorney "lied to the psychiatrist to get [Campbell] clear and competent to stand trial"). Furthermore, at that same time, Campbell complained to the county court that he had been wrongfully denied a competency hearing. See January, 1999 Transcript at 9. Thus, petitioner's claim that the trial court wrongfully ordered Campbell to undergo psychiatric testing prior to his trial is utterly meritless.

Additionally, Campbell's claim that the trial court improperly allowed the prosecutor to engage in misconduct is without substance because, as is discussed more fully above, the Court finds that the prosecutor did not engage in misconduct during the course of Campbell's criminal trial.

Additionally, petitioner's argument that the county court misrepresented the contents of a letter to which it referred at sentencing is: i) not supported by any evidence; and ii) not a basis upon which this Court could properly find that Campbell's rights were violated during the course

---

[20]     The trial court denied Campbell's initial request for replacement counsel due to his obstinate refusal to advise the trial court of the basis for his claim that his counsel labored under a conflict of interest. See October, 1998 Transcript at 2-5. The county court subsequently granted Campbell's request for replacement counsel on January 21, 1999. See January, 1999 Hearing at 10-11.

of the criminal trial (which necessarily preceded his sentencing hearing).

Finally, the county court's refusal to provide Campbell with a complimentary copy of the transcripts generated during the course of his criminal proceeding in March, 2002 could not have deprived Campbell of his right to appeal his convictions.  Specifically, Campbell did not **request** such copies until November 15, 2001 – the date on which he signed his motion seeking such transcripts.  <u>See</u> Dkt. No. 46.  The Third Department addressed the merits of Campbell's appeal on January 18, 2001, approximately ten months **prior** **to** petitioner's request for transcripts.  <u>See</u> <u>Campbell</u>, 279 A.D.2d at 797.

In sum, this Court finds that all of Campbell's claims alleging judicial misconduct on the part of Judge Smith to be utterly without merit.  He has therefore <u>a</u> <u>fortiori</u> failed to demonstrate that the Appellate Division's decision denying this aspect of his appeal, <u>Campbell</u>, 279 A.D.2d at 798, is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.  Accordingly, the undersigned denies his eleventh ground for relief.

### 11.    Testimony of Law Enforcement Agents

Campbell's next ground claims that the testimony provided by the police officers who testified on behalf of the prosecution was "not credible."  Am. Pet., Ground Twelve.  In support of this claim, Campbell argues that Officer Grier – whose ballistics shield was struck by a bullet fired by Campbell – provided testimony that was unworthy of belief.  In support of that claim, petitioner argues that such officer's testimony during which he stated that he held onto the shield after it was struck by the bullet, <u>see</u> Trial Tr. at 307-08, was incredible, and that "[u]nless Grier managed to suspend the laws of physics the bullet should have either ripped the shield from his hand or slammed him ... into the wall ...."  Am. Pet. at 25; <u>see</u> <u>also</u> <u>Pro</u> <u>Se</u> Appellate Brief at 46.

47

Unfortunately for Campbell, it is well established that courts viewing a cold record may not properly reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial.  As the Supreme Court observed in <u>United States v. Raddatz</u>, 447 U.S. 667 (1980):

> The most careful note ... often fail[s] to convey the evidence fully in some of its most important elements....  It cannot give the look or manner of the witness:  his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration; ... the dead body of the evidence, without its spirit; which is supplied, when given openly and orally, by the ear and eye of those who receive it.

 <u>Raddatz</u>, 447 U.S. at 670 (quotation and citation omitted); <u>see also</u> <u>Keller v. Bennett</u>, No. 98CV1437, 2002 WL 975306, at *4 (N.D.N.Y. Mar. 21, 2002) (Sharpe. M.J.) ("a habeas court, viewing a cold record, may not properly reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial") (citations omitted), <u>adopted</u>, <u>Keller v. Bennett</u>, No. 98CV1437 (Dkt. No. 18) (N.D.N.Y. Apr. 15, 2002) (Kahn, J.), <u>appeal dismissed</u>, No. 02-2328 (2d Cir. Dec. 12, 2003).  Thus, on collateral review, [a federal habeas court] "must presume that the jury resolved any questions of credibility in favor of the prosecution."  <u>Bellezza v. Fischer</u>, 01CV1445, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (quoting <u>Vera v. Hanslmaier</u>, 928 F.Supp. 278, 284 (S.D.N.Y. 1996)) (internal quotation and other citations omitted); <u>see</u> <u>also</u> <u>Cottrel v. New York</u>, 259 F.Supp.2d 300, 308 (S.D.N.Y. 2003) (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)).

Based upon the foregoing, this Court declines Campbell's invitation to assess the credibility of officer Grier – or any other prosecution witness – as a basis for granting petitioner's habeas application.  Accordingly, his twelfth ground seeking federal habeas relief is

denied.

### 12.     **Inconsistent Verdict**

In his thirteenth ground for relief, Campbell argues that the jury's verdict was inconsistent.  Am. Pet., Ground Thirteen.  Specifically, he argues that to properly convict him of the attempted assault charge, the jury necessarily found that he <u>intentionally</u> engaged in the alleged conduct.  Am. Pet. at 25 (emphasis added).  Petitioner next claims that to be found guilty of the reckless endangerment charge, the jury was required to find that Campbell acted <u>recklessly</u> in firing his handgun.  <u>Id</u>. (emphasis added).  Campbell argues that the jury's verdict – which found petitioner guilty of both counts referenced above – was therefore inconsistent and a basis for granting his request for federal habeas relief.  <u>Id</u>.

### i.     **Clearly Established Supreme Court Precedent**

The Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review.  <u>See</u> <u>Powell</u>, 469 U.S. at 65-66; <u>Dowling v. United States</u>, 493 U.S. 342, 353-54 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); <u>Harris v. Rivera</u>, 454 U.S. 339, 345 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

### ii.     **Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

Since the present habeas claim is rooted in the premise that the jury's verdict was inconsistent, <u>see</u> Am. Pet., Ground Thirteen, this Court initially considers whether the subject verdict was, in fact, inconsistent.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."  CPL § 300.30(5).

"Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." People v. Loughlin, 76 N.Y.2d 804, 806 (1990) (citing People v. Tucker, 55 N.Y.2d 1, 6-7 (1981)).  Thus, this Court examines the trial court's charge to the jury to determine whether petitioner's claim that the verdict is inconsistent has substance.

In instructing the jury on the first degree attempted assault charge, the trial court charged the jury that the prosecution was required to establish, inter alia, that on or about March 18, 1998, Campbell, "with intent to cause **serious physical injury** to another person, did attempt to cause such injury to such person by means of a deadly weapon."  Trial Tr. at 547-48 (emphasis added).  In sharp contrast to that charge, when instructing the jury as to the first degree reckless endangerment charge, the county court instructed the jury that the prosecution was required to establish that on or about March 18, 1998, "under circumstances evincing a depraved indifference to human life, [Campbell] recklessly engage[d] in conduct which created a **grave risk of death** to another person."  Trial Tr. at 548-49 (emphasis added).  In denying Campbell's appellate claim relating to the alleged inconsistency of the jury's verdict which found Campbell guilty of both of the foregoing crimes, the Third Department opined:

> We find no merit to defendant's contention that the verdict is inconsistent because the crimes of attempted assault and reckless endangerment require different mental states and cannot be committed by the same physical act. Here, the act of shooting is the same for the attempted assault and the reckless endangerment, but because the two crimes contemplate entirely distinct results there can be no inconsistency in the verdict. As the Court of Appeals has instructed, "[a] defendant could certainly intend one result--serious physical injury--while recklessly creating a grave risk that a different, more serious result--death--would ensue from

> his actions. ... Thus, a finding that defendant was guilty of
> attempted first degree assault [does] not 'necessarily negate [his]
> guilt' of first degree reckless endangerment.

Campbell, 279 A.D.2d at 797.

This Court agrees with the Third Department's determination that Campbell may well have intended to cause serious physical injury to one or more of the officers on March 18, 1998, while simultaneously recklessly creating a grave risk that a different, more serious result – death – would ensue from his wrongful actions. E.g., Campbell, 279 A.D.2d at 797. Since the jury's verdict was in no way inconsistent or repugnant, Campbell cannot prevail on his thirteenth ground for relief, which is premised upon the assumption that the verdict was inconsistent.

Additionally, since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, Harris, 454 U.S. at 345; see also Brunson v. Tracy, 378 F.Supp.2d 100, 110 (E.D.N.Y. 2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted), the Appellate Division's decision denying this aspect of Campbell's appeal is neither contrary to, nor an unreasonable application of, the above-cited clearly established Supreme Court authority. Therefore, for this reason as well, this Court must deny this ground for relief. E.g., Brunson, 378 F.Supp.2d at 110 (E.D.N.Y. 2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); Vassell v. McGinnis, No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D.N.Y. Dec. 22, 2004); Muldrow v. Herbert, 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb. 3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), appeal dismissed, No. 04-1839pr (2d Cir. Jan. 20, 2005).

### 13.   Right of Access to the Courts

51

In his final claim for relief, Campbell appears to argue that he was denied his right of access to the courts because the Third Department did not permit him to argue the issues raised in his pro se appellate brief through a teleconference and/or video connection. See Am. Pet., Ground Fifteen.[21]

Prisoners "have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977); accord Lewis v. Casey, 518 U.S. 343, 350 (1996); see, e.g., Murray v. Giarratano, 492 U.S. 1, 11 n.6 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law, and as an aspect of equal protection") (internal citations omitted); see also Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002). The Supreme Court has explained that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. However, the Supreme Court has observed that "Bounds did not create an abstract, freestanding right to a law library or legal assistance." Lewis, 518 U.S. at 351. Rather, "[t]he right that Bounds acknowledged was the (already well-established) right of access to the courts." Lewis, 518 U.S. at 350. "[I]n order to establish a violation of the right of access to the courts the

---

[21]    Although it does not appear as though Campbell ever asserted an access-to-courts claim in the state courts below, respondent has not argued that this ground must be dismissed due to petitioner's failure to exhaust his state court remedies. See Resp. Mem. Therefore, it would be improper for this Court to sua sponte dismiss this claim on this procedural basis. E.g., Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir. 2000) (courts should generally not raise sua sponte nonjurisdictional defenses not raised by the parties); Klem v. Brunelle, 96-CV-0807, 1999 WL 603824, at *2 n.3 (W.D.N.Y. Aug. 9, 1999) (exhaustion requirement applicable to habeas petitions is not jurisdictional but rather a principle of comity) (citation omitted). Accordingly, this Court has not sua sponte considered whether this final ground for relief is procedurally barred because it was not fully exhausted by him in the state courts.

[petitioner] must show that the ... alleged conduct resulted in actual injury to the [petitioner] such as the dismissal of an otherwise meritorious legal claim." Stubbs v. de Simone, No. 04CIV.5755, 2005 WL 2429913, at *17 (S.D.N.Y. Sept. 30, 2005) (citing Cancel v. Goord, No. 00 CIV 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)).

Petitioner has failed to demonstrate that the Appellate Division's failure to allow Campbell to provide oral argument in conjunction with his pro se appellate brief and/or appeal denied him his constitutional right of access to the courts. That court specifically acknowledged that it had considered Campbell's pro se brief in arriving at its decision denying his appeal, see Campbell, 279 A.D.2d at 798, and there is no basis upon which this Court could properly conclude that the result of Campbell's appeal would have been any different had petitioner – a non-attorney with a history of psychiatric illness – been afforded an opportunity to orally argue the points raised in his pro se appellate brief. Furthermore, this Court – like the Third Department – was fully capable of considering the substance of the claims raised in that brief without the necessity of oral argument. Thus, the Court denies Campbell's fifteenth and final claim for relief.

## III. Certificate of Appealability

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of

process issued by a State court ....[22]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, based upon the above, it is hereby

**ORDERED**, that the amended petition in this matter is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

Dated  :        July 19, 2006
               Syracuse, NY

Neal P. McCurn
Senior  U.S. District Judge

---

[22]Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).